# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMMEL & SILVERMAN, P.C., and CRAIG KIMMEL, ESQ., | CIVIL ACTION |
| Plaintiffs, | |
| | NO. |
| v. | |
| JACQUELINE PORRO, ESQ., MATTHEW PORRO, DAVID P. ANGUEIRA, ESQ. SWARTZ & SWARTZ, P.C. | *Jury Trial Demanded* |
| Defendants. | |

## COMPLAINT

Plaintiffs Kimmel & Silverman, P.C. and Craig Kimmel, Esq. (collectively, the "Plaintiffs"), by and through their undersigned counsel, bring this complaint against Defendants Jacqueline Porro, Esq., Matthew Porro, David P. Angueira, Esq. and Swartz & Swartz, P.C. (collectively, the "Defendants") and state as follows:

## THE PARTIES

1.  Plaintiff Kimmel & Silverman, P.C. ("K&S") is a professional corporation law firm organized and existing under the laws of the Commonwealth of Pennsylvania with an address at 30 East Butler Pike, Ambler, PA 19002.

2.  Plaintiff Craig Kimmel, Esq. ("Kimmel") is an adult individual with an address at 6000 Atkinson Road, New Hope, PA 18938.

3.  Defendant Jacqueline Porro, Esq. ("J. Porro") is an adult individual with an address at 23 Robin Lane, Rockland, MA 02370.

4. Defendant Matthew Porro ("M. Porro") is an adult individual with an address at 23 Robin Lane, Rockland, MA 02370.

5. Defendant David P. Angueira, Esq. ("Angueira") is an adult individual with an address at 63 Blacksmith Drive, Sudbury, MA 01776 and a business address at 10 Marshall Street, Boston, MA 02108.

6. Defendant Swartz & Swartz, P.C. ("S&S") is a professional corporation law firm organized and existing under the laws of the Commonwealth of Massachusetts with an address at 10 Marshall Street, Boston, MA 02108.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the Plaintiff and Defendant are residents of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District under and pursuant to 28 U.S.C. § 1391(a) in that all Defendants reside in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

A. <u>The Porro Lawsuit</u>

9. Plaintiffs were previously the target of a lawsuit by Defendants in this Court, captioned, *Porro, et al. v. Kimmel & Silverman, P.C., et al.*, No. 1:07-cv-12000-GAO (the "Porro Lawsuit").

10. In the Porro Lawsuit, which was removed to the District of Massachusetts on October 19, 2007, before Judge George A. O'Toole, Jr., Defendants J. Porro and M. Porro

(plaintiffs in the Porro Lawsuit), through their attorneys, Defendants S&S and Angueira, made numerous inflammatory and damaging accusations regarding Plaintiffs (defendants in the Porro Lawsuit).

11. The parties engaged in discovery, where numerous documents and materials relevant to the litigation were produced and multiple depositions were taken, including those of J. Porro and Kimmel.

12. Eventually the parties to the Porro Lawsuit amicably resolved their differences and arrived at a settlement.

13. Part and parcel of the overall settlement was a settlement agreement (the "Settlement Agreement"), which the parties to the Porro Lawsuit entered into in May of 2009. (Plaintiffs have elected to not attach the Settlement Agreement to this Complaint as an exhibit because it is subject to its own terms and should not be disclosed. However, Plaintiffs have excerpted the relevant portions below as is necessary for the Complaint.)

14. The terms of the Settlement Agreement specified, in no uncertain terms, that the highly sensitive information exchanged during the course of the Porro Lawsuit was to be kept confidential, and further, that any disclosure of the information would result in serious harm to Kimmel and K&S.

15. In fact, in relevant part, the Settlement Agreement stated that:

    a. The Parties and their counsel agree not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement and General Release, except to their tax advisor and/or attorneys with whom the Parties consulted regarding the Parties' consideration of this Agreement and General Release, and only on the condition that they cannot further disclose any such information to others, including but not limited to current or former co-workers, supervisors, assistants, part-time employees, officers, agents, or others. The Parties further agree that they shall instruct their

counsel and tax advisor in this matter to keep the terms of this Agreement and General Release and its existence confidential, as set forth above…and that they shall not authorize their counsel and/or tax advisor to reveal or comment upon the terms of the settlement….

b. The [Defendants] affirm that they have returned all of [Plaintiffs]' property, documents, and/or any confidential information in their possession or control. The [Defendants] agree that they will not make or publish any written or oral statements or remarks regarding the [Plaintiffs] or any of their present or former partners, employees, officers, directors or board members which are disparaging or damaging to the integrity, reputation or goodwill of [Plaintiffs]….

\* \* \* \* \*

d. The [Defendants] agree that any material violations of paragraphs 6(a)-(c) above may cause irreparable harm and damage to the [Plaintiffs] and will seriously interfere with the purpose of this Agreement and General Release…. In the event that a court of competent jurisdiction finds that any of the provisions of paragraphs 6(a)-(c) are materially violated, it will be a material breach of this Agreement and General Release and the parties agree that the [Plaintiffs] shall have the right to seek and obtain injunctive relief and damages in any Massachusetts court of competent jurisdiction from said violation, and the [Defendants] acknowledge that they will be obligated to the [Plaintiffs] for any damages, including reasonable attorneys' fees and costs incurred to bring an action for the material breach of this Agreement and General Release.

16. As quoted above, the Settlement Agreement prohibited the parties to the agreement **and** their counsel from disclosing "**any information regarding the underlying facts leading up to**" the Settlement Agreement.

17. Thus, J. Porro, M. Porro, S&S and Angueira were explicitly prohibited from divulging any underlying facts or information from the Porro Lawsuit.

4

18. If any underlying facts or information was disclosed, J. Porro, M. Porro, S&S and/or Angueira would be in direct violation of the Settlement Agreement and, pursuant to that agreement, it was agreed that Plaintiffs would suffer harm as a result of any disclosure.

19. Further, J. Porro and M. Porro promised that they had returned all of Defendants' property, documents, and/or any confidential information in their possession or control.

B. The Lohr Lawsuit

20. Merely five (5) months later, on October 29, 2010, Krista Lohr ("Lohr"), through her attorneys, Angueira and S&S, filed suit against Kimmel and K&S in the United States District Court for the Eastern District of Pennsylvania captioned *Lohr v. Kimmel & Silverman, P.C., et al.*, No. 2:10-cv-05857-HB (the "Lohr Lawsuit").

21. In the Lohr Lawsuit, Lohr, a former employee of K&S, made the same allegations that were made in the Porro Lawsuit.

22. Then, on January 7, 2011, Lohr, through her attorneys, S&S and Angueira, filed a memorandum in opposition to a motion to dismiss (the "Memorandum"). (Plaintiffs have elected to not attach the offending Memorandum to this Complaint as an exhibit because it contains sensitive and confidential information subject to the Settlement Agreement and further, is currently under seal.)

23. In the Memorandum, Lohr, through S&S and Angueira, recklessly and with wanton disregard divulged significant excerpts of multiple deposition transcripts (the "deposition transcripts") and a personal email chain between Kimmel and a K&S employee (the "email chain") which both included highly sensitive and harmful information.

24. In particular, the email chain between Kimmel and another K&S employee was improperly obtained from K&S' system prior to the Porro Lawsuit by J. Porro who claimed she

5

was given free access to other attorneys' and staff members' email accounts when, in fact, she did not have any such access privileges.

25. The recklessly divulged deposition transcripts and email chain were both used in the Porro Lawsuit and were subject to the terms of the Settlement Agreement, which clearly precluded Defendants from disclosing "**any information regarding the underlying facts leading up to**" the Settlement Agreement.

26. In fact, the email chain is conspicuously marked from the Porro Lawsuit as "Exhibit Kimmel 10, 4.2.08" and its use is clearly a disclosure of facts and/or information which led up to the Settlement Agreement in the Porro Lawsuit.

27. Even more egregiously, Lohr, through S&S and Angueira, attached copies of the deposition transcripts and the email chain that were used in the Porro Lawsuit and which were clearly subject to the terms of the Settlement Agreement to the Memorandum.

28. Lohr did not have access to the email chain or to the depositions transcripts on her own.

29. To the contrary, the only possible way for Lohr to obtain the email chain and deposition transcripts was from J. Porro, M. Porro, S&S and/or Angueira.

30. However, J. Porro and M. Porro were supposed to have returned all of Defendants' property, documents, and/or any confidential information in their possession or control from the prior lawsuit pursuant to the Settlement Agreement.

31. This included the email chain, which was never the property of J. Porro, M. Porro, S&S, and/or Angueira as it was improperly obtained in the first place.

32. The Memorandum in the Lohr Lawsuit remained open to public viewing between January 7, 2011 and January 13, 2011, when the Judge granted an emergency motion to seal the Memorandum filed by Kimmel and K&S.

33. During the above time period anyone with access to the internet could view the Memorandum, the email chain, and the deposition transcripts, all of which contained harmful and damaging allegations and information.

34. However, simply because the Memorandum was later put under seal does not mean that the email chain, the deposition transcripts and/or the Memorandum and its contents have not been disseminated for public viewing as a result of Defendants' actions.

35. It is well known that once something is on the internet and available for the public to view, it never truly disappears no matter what measures are taken to mitigate the damage.

36. Further, the Lohr Lawsuit is being closely followed in the legal community and has gained exposure in the most popular legal publication in the region where K&S is located and Kimmel does the majority of his business.

37. Clearly, Plaintiffs' personal information, business, and reputation have been put at risk by Defendants' actions.

38. Thus, despite the fact that Defendants were not to disclose any underlying facts or information regarding the Porro Lawsuit pursuant to the Settlement Agreement, Defendants baldly disregarded their contractual obligations and recklessly disclosed the email chain and the deposition transcripts which resulted in their use in the Memorandum.

39. As a result, on June 1, 2011, Plaintiffs, through their attorneys in the Porro Lawsuit, confronted S&S and Angueira about their actions and demanded that any property

subject to the Settlement Agreement be returned to Kimmel and K&S as required by the Settlement Agreement and that the Memorandum be withdrawn from the court docket.

40. Angueira and S&S, rather than accepting their grievous error and returning Plaintiffs' property and withdrawing the offending document from the court docket, brashly refused Plaintiffs' demands.

41. In response, Angueira preposterously asserted that the email chain and deposition transcript he used "were only copies of such documents" and that the materials were "placed in the public domain" during the Porro Lawsuit.

42. Defendants' arguments completely miss the mark.

43. The Defendants expressly agreed they would not disclose "**any information regarding the underlying facts leading up to**" the Settlement Agreement.

44. The email chain and the deposition transcripts are clearly information and/or underlying facts leading up to the Settlement Agreement within the meaning of the Settlement Agreement.

45. Whether or not the email chain and the deposition transcripts were in the public domain and/or copies, however, has **nothing** to do with the fact that these particular parties (J. Porro, M. Porro, Angueira, and S&S) were precluded from disclosing the email chain and the deposition transcripts **themselves**, which is exactly what they did.

46. Further, the email chain is clearly property of Plaintiffs and not Defendants. It was not obtained from anything belonging to or under the control of Defendants.

47. Moreover, none of the Defendants were ever given access privileges that would allow them to obtain the email chain on their own.

48.     As a result of Defendants' reckless, wanton, and wholly inappropriate conduct, Plaintiffs' personal reputations and professional livelihoods have been damaged and/or placed at extreme risk.

49.     Further, if the Defendants have disregarded their contractual obligations and disclosed the email chain and the deposition transcripts, it is entirely likely that the Defendants have other documents and materials which would also be subject to the Settlement Agreement and which they could disclose in contravention of the Settlement Agreement.

50.     Thus, contrary to the express terms of the Settlement Agreement, the very information that Plaintiffs sought to protect via the agreement was placed in the public eye for all to observe by the very people who were contractually precluded from doing so and moreover, Plaintiffs remain at risk of Defendants continuing this course of conduct.

## COUNT I – BREACH OF CONTRACT
Plaintiffs v. All Defendants

51.     Plaintiffs incorporate herein by reference the allegations contained in all of the preceding paragraphs above as though set forth in their entirety.

52.     Plaintiffs entered into a valid and binding contract, the Settlement Agreement, with Defendants in the Porro Lawsuit.

53.     The terms of the Settlement Agreement prohibited the parties to the agreement and their counsel from disclosing "**any information regarding the underlying facts leading up to**" the Settlement Agreement.

54.     Inclusive in the materials that were prohibited from disclosure were documents exchanged during discovery, including the email chain and the deposition transcripts.

55.     However, contrary to the express mandate of the Settlement Agreement, the Defendants disclosed, withheld and/or otherwise made use of deposition transcripts and email chain used in Porro Lawsuit.

56.     In fact, Angueira and S&S used the email chain and deposition transcripts to further their case against Plaintiffs in the Lohr Lawsuit.

57.     The only possible way for the email chain and deposition transcripts to have made their way into the Lohr Lawsuit is through actions by Defendants in the present matter.

58.     As such, Defendants have breached the express provisions of the Settlement Agreement.

59.     As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants in an amount in excess of $75,000.00, plus attorneys' fees, continuing interest, costs of suit and such other remedies as the Court deems just and proper.

### COUNT II – TORTIOUS INTERFERENCE
Plaintiffs v. Angueira and S&S

60.     Plaintiffs incorporate herein by reference the allegations contained in all of the preceding paragraphs above as though set forth in their entirety.

61.     Alternatively, Angueira and S&S tortiously interfered with Plaintiffs' Settlement Agreement with Defendants J. Porro and M. Porro.

62.     Plaintiffs had a valid and binding contractual agreement, the Settlement Agreement, with J. Porro and M. Porro.

63. Angueira and S&S knowingly induced J. Porro and M. Porro to violate the Settlement Agreement when they obtained and then used the email chain and deposition transcripts to further their case in the Lohr Lawsuit.

64. Angueira and S&S's interference was improper in that they used the email chain and deposition transcripts in direct contravention of the Settlement Agreement.

65. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants in an amount in excess of $75,000.00, plus punitive damages, continuing interest, costs of suit and such other remedies as the Court deems just and proper.

## COUNT III – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
Plaintiffs v. All Defendants

66. Plaintiffs incorporate herein by reference the allegations contained in all of the preceding paragraphs above as though set forth in their entirety.

67. Plaintiffs entered into a valid and binding contract, the Settlement Agreement, with Defendants in the Porro Lawsuit.

68. Implicit in every contract is a covenant of good faith and fair dealing which states that neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract.

69. Further, Plaintiffs had a reasonable expectation that Defendants would act in good faith in the performance of their obligations under the Settlement Agreement.

70. When Defendants disclosed the documents and deposition transcripts in contravention of the Settlement Agreement in the Lohr Lawsuit, they breached the implied covenant of good faith and fair dealing.

11

71. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants in an amount in excess of $75,000.00, plus continuing interest, costs of suit and such other remedies as the Court deems just and proper.

### COUNT IV – FRAUD
Plaintiffs v. All Defendants

72. Plaintiffs incorporate herein by reference the allegations contained in all of the preceding paragraphs above as though set forth in their entirety.

73. To establish a claim of fraud, a plaintiff must show that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.

74. Defendants falsely represented to Plaintiffs that they would not disclose any information regarding the underlying facts leading up to the Settlement Agreement.

75. Defendants knew that this representation was false as the Settlement Agreement was entered into in May of 2009 and the Lohr Lawsuit, where Defendants disclosed information and/or underlying facts in violation of the Settlement Agreement, was initiated a mere five (5) months later.

76. Defendants also clearly made such representations for the purpose of inducing Plaintiffs to enter into the Settlement Agreement with no intention of abiding by its terms as the Lohr Lawsuit evidences.

77. Plaintiffs did, in fact, rely upon Defendants' representations and entered into the Settlement Agreement, believing that the parties to it would abide by its terms.

78. As a direct and proximate result of Plaintiffs' reliance upon Defendants' representations, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants in an amount in excess of $75,000.00, plus punitive damages, continuing interest, costs of suit and such other remedies as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury of twelve (12) on all issues so triable.

Submitted by:

PEABODY & ARNOLD LLP

By: /s/ Timothy M. Pomarole
Robert T. Gill BBO # 192080
Timothy M. Pomarole BBO # 880627
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
617.951.2100 main
617.951.2125 fax
rgill@peabodyarnold.com
tpomarole@peabodyarnold.com
*Attorneys for Plaintiffs*

and

WEIR & PARTNERS LLP

By: _____
Daniel D. Haggerty
Benjamin E. Schmidt
The Widener Building, Suite 500
1339 Chestnut Street
Philadelphia, PA 19107
215-665-8181
215-665-8464 (fax)
dhaggerty@weirpartners.com
bschmidt@weirpartners.com
*Attorneys for Plaintiffs*
*Pro Hac Vice Pending*

Dated: June 22, 2011