UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KIMMEL & SILVERMAN, P.C. and<br>CRAIG KIMMEL, ESQ., | )<br>)<br>) | |
| Plaintiffs,<br>v. | )<br>)<br>) | CIVIL ACTION<br>NO. 11-11124-GAO |
| JACQUELINE PORRO, ESQ.,<br>MATTHEW PORRO,<br>DAVID P. ANGUEIRA, ESQ., and<br>SWARTZ & SWARTZ, P.C., | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

# MEMORANDUM OF DECISION AND
# ORDER ON DEFENDANTS' MOTION TO STRIKE

July 2, 2014

DEIN, U.S.M.J.

This action arises out of the alleged disclosure of confidential information by the defendants, David P. Angueira, Esq. and the law firm of Swartz & Swartz, P.C. (collectively, the "Swartz defendants"), during the course of a lawsuit (the "Lohr Lawsuit") that they were prosecuting on behalf of their client, Krista Lohr, against the plaintiffs in this action, Craig Kimmel, Esq. and the law firm of Kimmel & Silverman, P.C. (collectively, "Kimmel"). Kimmel claims that the Swartz defendants had obtained the confidential information that was disclosed in the Lohr Lawsuit when they represented Jacqueline Porro, Esq. and Matthew Porro (collectively, the "Porros") in an earlier lawsuit (the "Porro Lawsuit") that had been filed against Kimmel in this court. They also claim that

the disclosure violated the terms of a Settlement Agreement, which had been entered into by the parties to the Porro Lawsuit, that prohibited both the parties and their counsel from disclosing any information regarding the underlying facts leading up to the settlement.

On June 22, 2011, Kimmel filed this action against the Swartz defendants and the Porros raising a number of claims based on the allegedly wrongful disclosure of confidential information. In August 2013, Kimmel reached a settlement with the Porros based on the Porros' representation that they were not involved in the Swartz defendants' decision to file the allegedly confidential information in the Lohr Lawsuit. Pursuant to the settlement, Kimmel and the Porros executed reciprocal Releases releasing all of their claims against one another. Furthermore, all of the parties executed a Stipulation of Dismissal as to the Porros, which was filed with the court on September 24, 2013.

The matter is presently before the court on various cross-motions for summary judgment. In the Defendants' Motion for Summary Judgment (Docket No. 126), the Swartz defendants claim that the Releases signed by Kimmel and the Porros had the effect of releasing the claims against the Swartz defendants as well. In opposition to the motion, the plaintiffs have filed an affidavit from their counsel, James S. Singer. This matter is presently before the court on the Swartz defendants' "Motion to Strike Affidavit of James S. Singer" (Docket No. 136). For the reasons detailed herein, the motion to strike is DENIED.

### A. Attorney Singer's Affidavit

By their motion for summary judgment, the Swartz defendants argue that the broad language of the Release that Kimmel executed in connection with the settlement with the Porros released not only the Porros, but also the Swartz defendants, from all claims and causes of action that Kimmel has asserted against them in this action. The relevant language of the Release[1] provides as follows:

> For good and valuable consideration, Kimmel & Silverman, P.C. and its past, present and future officers, directors, shareholders, partners, members, employees, attorneys, ... successors and assigns, including, but not necessarily limited to, Craig Kimmel and Robert Silverman (hereinafter collectively "Releasors"), hereby completely remise, *release and forever discharge Jacqueline Porro and Matthew Porro and their past ... attorneys*, insurers, reinsurers, and assigns (hereinafter collectively "Releasees") of and from all ... actions, causes of action, suits, controversies ... and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and equity (hereinafter collectively "Claims"), which the Releasors now have or may have from the beginning of the world to this date against the Releasees ....

(emphasis added). Because the Swartz defendants previously served as counsel to the Porros in the Porro Lawsuit, they contend that they are included within the ordinary meaning of the phrase "past attorneys," and are entitled to judgment as a matter of law with respect to all Counts of the complaint.

In connection with their opposition to the defendants' motion for summary judgment, the plaintiffs submitted the Affidavit of James S. Singer. Attorney Singer is

---

[1] A copy of the Release is attached to the Swartz defendants' Concise Statement of Material Facts (Docket No. 128) that was submitted in support of the Defendants' Motion for Summary Judgment.

the lead counsel for Kimmel in this action, and is also the attorney who represented the plaintiffs in their settlement negotiations with the Porros. In his Affidavit, Attorney Singer describes the circumstances leading up to and surrounding the settlement and execution of the Release, including the parties' communications with this court regarding the status of the settlement negotiations. (See generally Singer Aff. (Docket No. 132)). He also describes the intentions and understanding of the parties regarding the scope of the Release, including his own understanding that Kimmel was releasing the Porros, but not the Swartz defendants, from the present litigation. (See, e.g., id. ¶¶ 7, 14). For example, in paragraph 14 of the Affidavit, Attorney Singer states as follows:

> I never intended the Release given by Kimmel & Silverman to the Porros was also to run in favor of Swartz & Swartz as they were not parties to the settlement. As evidenced by the [parties'] Joint Statement, the transcript of the July 24, 2013 status conference, and the Stipulation of Dismissal, [counsel for the Swartz defendants] was well aware of this fact. Moreover, given the issue raised by [the Porros' counsel] as to potential liability of Kimmel & Silverman's prior counsel for filing the action, the Release from the Porros specifically included by name the two law firms that represented Kimmel & Silverman in this matter (although my firm did not file the action as it is successor counsel). The Release from Kimmel & Silverman specifically included the Porros' counsel in this Litigation, Morrison Mahoney LLP. There is no such specificity in Kimmel & Silverman's Release of the Porros as to any release of Swartz & Swartz.

(Id. ¶ 14).

### B. The Swartz Defendants' Challenge to the Affidavit

The Swartz defendants argue that the language of the Release at issue is clear and unambiguous, and therefore must be interpreted by the court without consideration of

extrinsic evidence such as Attorney Singer's Affidavit. (Def. Mot. to Strike at 2). They further argue that Attorney Singer's statements regarding his intent and understanding constitute an impermissible interpretation of the Release that usurps the role of the court. (Id. at 2-3). Accordingly, they have moved to strike "those portions of Attorney Singer's affidavit providing nothing more than his interpretation, understanding and irrelevant opinion of the scope and terms of the release[.]" (Id. at 3). This court finds that the Affidavit is properly before the court as part of the record on summary judgment, and that no portion of it should be stricken.

"The interpretation of releases is governed by principles of contract law." In re Babcock Borsig AG, 583 F. Supp. 2d 233, 236 (D. Mass. 2008). In the instant case, the parties agree that the substantive contract law of Massachusetts governs their dispute concerning the scope of the Release. (See Def. Mot. to Strike at 2; Pl. Opp. to Mot. to Strike (Docket No. 139) at 2-4). Under Massachusetts law, "[a] court interpreting a contract must first assess whether the contract is ambiguous." Farmer's Ins. Exchange v. RNK, Inc., 632 F.3d 777, 783 (1st Cir. 2011). "Should the court find the contract language unambiguous, [it must] interpret [the document] according to its plain terms" without regard to extrinsic evidence regarding the drafting history or intent of the parties. Id. at 784 (quoting Den Norske Bank AS v. First Nat'l Bank of Boston, 75 F.3d 49, 52 (1st Cir. 1996)). However, if the court determines that the contract is ambiguous, it "is free to look to extrinsic evidence in order to give a reasonable construction in light of the intentions of the parties at the time of formation of the contract." President & Fellows of

Harvard Coll. v. PECO Energy Co., 57 Mass. App. Ct. 888, 896, 787 N.E.2d 595, 601 (2003) (internal citation omitted).

The defendants have not presented a sufficient reason to strike Attorney Singer's Affidavit, either in whole or in part. As an initial matter, the plaintiffs argue that an ambiguity exists as to whether the inclusion of the term "past attorneys" in the Release encompasses the defendants in the instant action. (See Pl. Opp. to Mot. to Strike at 2-3). To the extent this court determines that the plaintiffs are correct, it will be appropriate for the court to consider evidence of the parties' intent, including the statements of the attorney who negotiated the settlement on behalf of Kimmel.

Even if the court determines that the Release is unambiguous, the information in Attorney Singer's Affidavit is relevant. As the plaintiffs argue, even if the court finds that the terms of the Release are unambiguous and must be interpreted to encompass the Swartz defendants, the court may reform the Release on the basis of a mutual mistake in order to express the true intent of the parties. (Id. at 4). In evaluating a claim of mutual mistake, this court may consider the substance of Attorney Singer's Affidavit. As the First Circuit explained in OneBeacon Am. Ins. Co. v. Travelers Indem. Co. of Ill., 465 F. 3d 38, 41 (1st Cir. 2006):

> "Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected." Restatement (Second) of Contracts § 155 (2006). When a party asks for

reformation of a contract, it is not asking the court to interpret the contract but rather to change it to conform to the parties' intent. *See id.* cmts. a, b. Accordingly, the usual restrictions on contract interpretation, such as the parol evidence rule, do not apply to a court's inquiry into the parties' intent. *See Berezin* [*v. Regency Sav. Bank*, 234 F.3d 68, 72 (1st Cir. 2000)]; *Polaroid* [*Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 756, 610 N.E.2d 912, 917 (1993)]. <u>In a reformation case, it does not matter that a contract unambiguously says one thing. A court still will accept extrinsic evidence in evaluating a claim that both parties to the contract intended it to say something else</u>.

(emphasis added). Therefore, this court may review Attorney Singer's Affidavit to determine whether the Release reflects a mutual mistake by the parties to the settlement, and whether reformation of the Release is warranted. Because the Affidavit is properly before the court, the motion to strike is denied.

                                        / s / Judith Gail Dein
                                        Judith Gail Dein
                                        U.S. Magistrate Judge