UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11124-GAO

KIMMEL & SILVERMAN, P.C., and CRAIG KIMMEL, ESQ.,
Plaintiffs,

v.

JACQUELINE PORRO, ESQ., MATTHEW PORRO, DAVID P. ANGUEIRA, ESQ.,
SWARTZ & SWARTZ, P.C.,
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
September 30, 2014

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that the defendants' motion for summary judgment and the plaintiffs' cross-motion for summary judgment be denied and that the defendants' further motion for summary judgment be granted. The defendants and the plaintiffs have each filed objections to the Report and Recommendation ("R&R") and replies to the objections.

Having reviewed the relevant pleadings and submissions, as well as the objections to the R&R, I approve and ADOPT the magistrate judge's recommendation in its entirety.

Accordingly, the Defendants' Motion (dkt. no. 126) for Summary Judgment and Plaintiffs' Cross-Motion (dkt. no. 151) for Partial Summary Judgment are DENIED and Defendants' Further Motion (dkt. no. 144) for Summary Judgment is GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KIMMEL & SILVERMAN, P.C. and | ) | |
| CRAIG KIMMEL, ESQ., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 11-11124-GAO |
| | ) | |
| JACQUELINE PORRO, ESQ., | ) | |
| MATTHEW PORRO, | ) | |
| DAVID P. ANGUEIRA, ESQ., and | ) | |
| SWARTZ & SWARTZ, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON
## PARTIES' MOTIONS FOR SUMMARY JUDGMENT

July 2, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

This action involves the alleged disclosure of confidential information obtained in

one lawsuit in connection with the prosecution of a subsequent action. Specifically, the

defendants, David P. Angueira, Esq. and the law firm of Swartz & Swartz, P.C. (collec-

tively, the "Swartz defendants"), represented the defendants, Jacqueline Porro, Esq. and

Matthew Porro, in litigation against the plaintiffs, Kimmel & Silverman, P.C. and Craig

Kimmel, Esq. (collectively, "Kimmel"). The action, entitled Porro, et al. v. Kimmel &

Silverman, P.C., et al., Civil Action No. 07-12000-GAO (the "Porro Lawsuit"), was

eventually settled pursuant to a Settlement Agreement. Kimmel contends that, in

connection with the Porro Lawsuit, the Swartz defendants and the Porros obtained confidential information which they were precluded from disclosing pursuant to the terms of the Settlement Agreement.

After the Porro Lawsuit was completed, the Swartz defendants represented Krista Lohr in litigation against Kimmel, this time in a lawsuit in the Eastern District of Pennsylvania entitled Lohr v. Kimmel & Silverman, P.C., et al., No. 2:10-cv-05857-HB (the "Lohr Lawsuit"). In connection with the Lohr Lawsuit, the Swartz defendants filed documents with the court which Kimmel contends contained confidential information, the disclosure of which, it is alleged, violated the Settlement Agreement in the Porro Lawsuit. The instant litigation ensued against the Swartz defendants and the Porros. Herein, Kimmel contends that the defendants' actions, including the filing of the allegedly confidential information, constituted a breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count III), and fraud (Count IV). In addition, Kimmel has asserted a claim against the Swartz defendants for tortious interference by which they allege that the defendants knowingly induced the Porros to violate the Settlement Agreement when the Swartz defendants obtained and then used the confidential information to further their case in the Lohr Lawsuit (Count II).

During the course of this action, in August 2013, the plaintiffs reached a settlement with the Porros. As agreed in their settlement, Kimmel and the Porros executed reciprocal Releases in which they released all of their claims against one another in this action. In addition, all of the parties, including the Swartz defendants,

executed a Stipulation of Dismissal as to the Porros. The Stipulation of Dismissal was filed in this court on September 24, 2013. Accordingly, the Porros are no longer parties to this litigation.

The matter is presently before the court on the "Defendants' Motion for Summary Judgment" (Docket No. 126) and the "Defendants' Further Motion for Summary Judgment" (Docket No. 144), which were filed by the Swartz defendants, as well as on the "Plaintiffs' Cross-Motion for Partial Summary Judgment as to Liability on Count I" (Docket No. 151). By their first motion for summary judgment, the Swartz defendants argue that the broad language of the Release that Kimmel executed in favor of the Porros, which includes the release of the Porros' past attorneys, constitutes a release of all of Kimmel's claims against the Swartz defendants as well. For all the reasons described below, this court finds that the parties to the settlement had no intention of releasing the Swartz defendants from this action, and that the inclusion of language encompassing those parties within the scope of the Release constituted a mutual mistake that supports the reformation of the Release. Accordingly, this court recommends to the District Judge to whom this case is assigned that the Swartz defendants' first motion for summary judgment (Docket No. 126) be DENIED, and that the Release be reformed in order to exclude the Swartz defendants from its scope.

By their second motion for summary judgment, the Swartz defendants are seeking summary judgment on the merits of the plaintiff's claims. Specifically, the defendants assert that they are entitled to judgment as a matter of law on all of those claims because

-3-

their disclosure of any alleged confidential information in the context of the Lohr Lawsuit was protected as a matter of law under various theories. The plaintiffs, in addition to opposing the motion, contend by their cross-motion that they are entitled to judgment as a matter of law on their claim for breach of contract because, they allege, the Swartz defendants violated the Settlement Agreement by filing the confidential information. As described herein, this court finds that all of the conduct giving rise to the remaining claims in this action was carried out by the Swartz defendants while they were representing clients in the course of litigation. Consequently, this court is constrained to conclude that the absolute litigation privilege recognized under Massachusetts law protects the Swartz defendants from liability to the plaintiffs in this action. Accordingly, this court recommends that the defendants' further motion for summary judgment (Docket No. 144) be ALLOWED, and that the plaintiff's cross-motion for partial summary judgment (Docket No. 151) on Count I be DENIED.

## II. STATEMENT OF FACTS[1]

The following facts relevant to the parties' motions for summary judgment are

undisputed unless otherwise indicated.

### Events Giving Rise to This Action

In 2007, Jacqueline and Matthew Porro filed the Porro Lawsuit against the

plaintiffs in this action, Attorney Kimmel and the law firm of Kimmel & Silverman, P.C.

(See DF ¶ 1; PR ¶ 1). The defendants in this case, Attorney Angueira and the law firm of

Swartz & Swartz, P.C., represented the Porros in that litigation. (DF ¶ 2). The parties to

the Porro Lawsuit reached a settlement, and in May 2009, they entered into a Settlement

---

[1] Unless otherwise indicated, the facts are derived from the following materials: (1) the defendants' Concise Statement of Material Facts (Docket No. 128) ("DF"); (2) the Affidavit of James S. Singer (Docket No. 132) ("Singer Aff."), including the exhibits attached thereto ("Singer Aff., Ex. __"); (3) the Plaintiffs' Response to Defendants' Concise Statement of Material Facts (Docket No. 133) ("PR"); (4) the Plaintiffs' Concise Statement of Additional Facts (Docket No. 133) ("PAF"); (5) the Defendants' Response to Plaintiffs' Statement of Additional Facts (Docket No. 135) ("DRAF"); (6) the defendants' Rule 56.1 Concise Statement of Material Facts (Docket No. 146) ("DMF") and the exhibits attached thereto ("Def. Ex."); (7) the Plaintiffs' Response to Defendants' Rule 56.1 Concise Statement of Material Facts (Docket No. 148) ("PRMF"); (8) the Plaintiffs' Concise Statement of Material Facts for Cross-Motion for Partial Summary Judgment (Docket No. 153) ("PF"); (9) the Defendants' Responses to Plaintiffs' Concise Statement of Material Facts for Cross-Motion for Partial Summary Judgment (Docket No. 156) ("DR"); (10) the Defendants' Additional Concise Statement of Material Facts, which is set forth beginning on page 5 of the Defendants' Responses to Plaintiffs' Concise Statement of Material Facts for Cross-Motion for Partial Summary Judgment (Docket No. 156) ("DAF"); and (11) the Plaintiffs' Response to Defendants' Additional Concise Statement of Material Facts to Cross-Motion (Docket No. 160) ("PRAF"). In addition, this court has considered the Affidavit of David P. Angueira, Esq. (Docket No. 41-1) ("Angueira Aff."), which was filed in support of the Defendants' Rule 11 Motion for Sanctions and is cited by the Swartz defendants in their statements of facts. As detailed in this court's Memorandum of Decision and Order on Defendants' Motion to Strike issued on this date, this court has denied the Swartz defendants' motion to strike portions of the Affidavit of James S. Singer. Therefore, this court has considered the Affidavit in its entirety.

Agreement. (DMF ¶ 3). The Settlement Agreement provided in relevant part as follows: "The Parties *and their counsel* agree not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement . . . ." (Opinion & Order (Docket No. 63) at 1). Attorney Angueira signed his name on the Agreement under a line that read, "Approved as to form." (Id.; see also DAF ¶ 14).

Five months after the Settlement Agreement was signed in the Porro Lawsuit, Krista Lohr filed the Lohr Lawsuit against Kimmel in the District Court for the Eastern District of Pennsylvania. (Opinion & Order at 1; PF ¶ 7). The Swartz defendants represented Ms. Lohr in that litigation. (PF ¶ 7). On January 7, 2011, the Swartz defendants, on behalf of their client, filed a memorandum in opposition to a motion to dismiss in the Lohr Lawsuit. (Id. ¶ 8; DR ¶ 8). They also submitted, as exhibits to the memorandum, copies of deposition transcripts and an email chain that they had obtained through discovery in the Porro Lawsuit. (PF ¶¶ 8, 11; DR ¶ 8). Kimmel claims that these materials contained confidential information that was subject to the Settlement Agreement, and that the disclosure of these materials in the Lohr Lawsuit violated the terms of the Agreement. (See PF ¶ 9; Compl. (Docket No. 1) ¶¶ 22-25, 55). While the Swartz defendants do not dispute that they filed the challenged materials, they dispute that the documents were confidential, or that they were parties to the Settlement Agreement, or that the Settlement Agreement precluded them from using those documents in connection with the Lohr Lawsuit. (See DR ¶¶ 10-12, 14; DMF ¶¶ 6-7). They also contend that their

actions in filing the documents during the course of litigation were absolutely privileged and are therefore not actionable in the present case.

The parties to the Lohr Lawsuit ultimately reached a settlement. (DMF ¶ 4). On October 4, 2012, a stipulation of dismissal was filed and entered on the docket, thereby resolving that litigation. (Id.). The Swartz defendants have asserted that the settlement in the Lohr Lawsuit has rendered the plaintiffs' claims in this matter moot.

### The Instant Litigation

On June 22, 2011, prior to the completion of the Lohr Lawsuit, Kimmel filed the instant action against the Porros and the Swartz defendants. By their complaint, the plaintiffs asserted claims against all of the defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. (Compl. at Counts I, III & IV). They also asserted a claim against the Swartz defendants for tortious interference with the Settlement Agreement between Kimmel and the Porros. (Id. at Count II). As described in the complaint, the plaintiffs' contract and tortious interference claims are based directly upon the Swartz defendants' conduct in filing the deposition transcripts and email chain from the Porro Lawsuit as exhibits in the Lohr Lawsuit. (See id. ¶¶ 52-71). In support of their claim for fraud, the plaintiffs allege that the defendants induced them to enter into the Settlement Agreement in the Porro Lawsuit by falsely representing that they would not disclose any information concerning the facts leading up to the Settlement Agreement. (Id. ¶¶ 74-76). They further allege that the defendants knew that

-7-

their representation was false, and that the plaintiffs suffered harm as a result of their reliance on the representation.  (Id. ¶¶ 75, 77-78).

On June 22, 2011, the plaintiffs herein filed a motion for a temporary restraining order and a preliminary injunction to protect the confidentiality of the information regarding the underlying facts leading up to, and inclusive of, the Settlement Agreement in the Porro Lawsuit.  (See Docket Nos. 7 & 8).  In support of their motion, the plaintiffs presented evidence supporting their claim that the defendants were bound by the terms of the Settlement Agreement and had breached that Agreement by submitting the email chain and deposition transcripts to the court in the Lohr Lawsuit.  (Docket No. 8 at 8-9). The plaintiffs also argued that they had suffered irreparable harm to their prestige and reputation due to the disclosure of the challenged materials, and that they would likely suffer additional harm in the absence of an injunction.  (Id. at 10-11).  Finally, they argued that the defendants would not be harmed, and there would be no adverse impact on the public, if the court allowed their motion for injunctive relief.  (Id. at 11-12).

The Swartz defendants opposed the plaintiffs' motion, and also moved to dismiss the complaint pursuant Fed. R. Civ. P. 12(b)(6).  (See Docket Nos. 19 & 27).  In particular, the Swartz defendants asserted that the plaintiffs' claims should be dismissed and their motion for injunctive relief should be denied because neither Attorney Angueira nor the law firm of Swartz & Swartz were parties to the Settlement Agreement in the Porro Lawsuit.  (Docket No. 19 ¶ 4; Docket No. 20 at 4; Docket No. 27 at 4).  They also argued that their actions in filing the deposition transcripts and email chain in the Lohr Lawsuit

were absolutely privileged, and that the enforcement of the Settlement Agreement against them would violate the Massachusetts Rules of Professional Conduct by precluding them from fully and zealously representing their client in the Lohr Lawsuit. (See Docket No. 19 ¶ 4; Docket No. 20 at 4-9; Docket No. 27 at 4-6). While the motions for injunctive relief and to dismiss remained pending, the Swartz defendants filed a motion for sanctions against Kimmel's counsel pursuant to Fed. R. Civ. P. 11. (Docket No. 41). In support of that motion, the Swartz defendants presented the same arguments on which they relied in support of their motion to dismiss and their opposition to the plaintiffs' motion for a restraining order and temporary injunction. (See Docket No. 42 at 4-7).

On March 28, 2012, the District Court (O'Toole, D.J.) issued an Opinion and Order denying the Swartz defendants' motions to dismiss and for sanctions, and granting the plaintiffs' motion for a preliminary injunction. (Opinion & Order). Therein, the District Judge ruled in relevant part that the Swartz defendants were parties to and bound by the confidentiality provision of the Settlement Agreement in the Porro Lawsuit, and that their ethical obligation to represent their client effectively in the Lohr Lawsuit did not require them to violate the Settlement Agreement. (Id. at 2-3). The District Judge also rejected the defendants' assertion that the plaintiffs' claims should be dismissed because their actions in the Lohr Lawsuit were absolutely privileged. Instead, the District Judge found that the question "[w]hether the privilege applies here can best be determined after discovery." (Id. at 3). In connection with his ruling on Kimmel's motion for a preliminary injunction, the District Judge found that the plaintiffs had established a likelihood of

success on their breach of contract claim, and that they were entitled to a preliminary injunction precluding the defendants from disclosing confidential information from the Porro Lawsuit. (Id. at 4). However, the Court specifically ruled that while "the defendants may not disclose the confidential information [they] are not precluded from using" the substance of the information in connection with their representation of Lohr. (See id.).

Despite their lack of success on the motion to dismiss, the Swartz defendants subsequently filed a motion for judgment on the pleadings in which they relied primarily on the same arguments that they had raised in the motion to dismiss and had been addressed by the District Judge in his March 28, 2012 Opinion and Order. (See Docket Nos. 88 & 89). On June 3, 2013, this court issued a "Report and Recommendation on Swartz Defendants' Motion for Judgment on the Pleadings" ("R&R") in which it recommended that the defendants' motion be denied. (R&R (Docket No. 111) at 1). As this court explained in its R&R,

> In the instant case, the only new fact raised by the Answer and Supplemental Answer filed by the Swartz defendants is that the Lohr Lawsuit has been settled and a stipulation of dismissal has been filed. As detailed below, however, this new "fact" does not alter the court's analysis as to whether the plaintiffs have stated a plausible claim for relief. Thus, the Swartz defendants' motion for judgment on the pleadings is in actuality a motion for reconsideration. "[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009). The Swartz defendants have

not established that reconsideration at this stage in the litigation,
without discovery, is warranted.

(Id. at 5-6). Accordingly, this court declined to reconsider the District Judge's ruling on

the motion to dismiss, and ruled that "[t]he defendants can reargue their positions

following the further development of the factual record through discovery." (R&R at 1).

It also rejected the Swartz defendants' new argument that the settlement of the Lohr

Lawsuit rendered Kimmel's present claims against them moot. (Id. at 9-10). The R&R

was adopted by the District Judge on August 13, 2013.

As described below, the Swartz defendants have raised the same arguments again

in support of their second motion for summary judgment, albeit after discovery. The

parties dispute whether the court's prior rulings constitute the law of the case or whether

the defendants are entitled to have their arguments evaluated based on the present state of

the record. As detailed herein, this court concludes that it is appropriate to review these

claims now that discovery has been completed.

## The Porro Settlement

At some point during the pending litigation, counsel for the plaintiffs, James S.

Singer, Esq., entered into settlement negotiations with counsel for the Porros, Edwin

Landers, Esq. (Singer Aff. ¶ 5). Terrence Hamilton, Esq., the attorney for the Swartz

defendants, was not involved in the negotiations. (Id. ¶ 8). Eventually, Attorneys Singer

and Landers were able to achieve a settlement between Kimmel and the Porros based on

the fact that the Porros had not participated in the decision to file the challenged material

in the Lohr Lawsuit. (See PAF ¶¶ 8, 9). The settling parties agreed to exchange reciprocal releases, and to dismiss Kimmel's claims against the Porros with prejudice. (Id. ¶ 9).

On July 19, 2013, all of the parties to the litigation filed a Joint Status Conference Statement in which they informed the court that "[t]he Plaintiffs and the Defendants Jacqueline Porro, Esq. and Matthew Porro (collectively, 'Porro Defendants') have reached a settlement in principle, and settlement documents are being circulated. This settlement will result in the dismissal of the Porro Defendants from this case." (Singer Aff., Ex. 2 at 1). With respect to the Swartz defendants, the parties described the status of ongoing discovery between Kimmel and those defendants, and proposed revisions to the discovery schedule. (Id. at 1-3). They also informed the court that Kimmel and the Swartz defendants had "not yet been able to reach an agreement as to the use of alternative dispute resolution." (Id. at 3). Moreover, they indicated that Kimmel and the Swartz defendants and had not been able to reach agreement "with respect to consent to trial before the Magistrate Judge." (Id.). Thus, it was clear from this filing that the Swartz defendants understood that the case against them was going to proceed even though the claims against the Porros had been resolved.

On July 24, 2013, counsel for each of the parties appeared at a status conference before this court. (See Singer Aff., Ex. 3 at 2). During the conference, this court inquired as to the status of the settlement between Kimmel and the Porros. (Id.). Counsel for the plaintiffs reported that settlement documents had been circulated to

Kimmel and the Porros, and that the attorneys were waiting for those documents to be executed. (Id. at 2-3). He also reported that the parties would be entering into a stipulation of dismissal with respect to the Porros, and that he would speak to counsel for the Swartz defendants about joining into the stipulation for the dismissal of the Porros. (See id.). Following further discussions between the court and counsel for the settling parties, counsel for the Porros agreed to withdraw a motion for judgment on the pleadings that was pending before the court, and this court indicated that it expected the settlement to be completed within thirty days from the date of the conference. (Id. at 3-4). Counsel for Kimmel and the Swartz defendants then engaged in a lengthy discussion with this court regarding the schedule for the completion of discovery relating to the case against the Swartz defendants, and the court set up another status conference for December 17, 2013. (See id. at 4-14).

It is undisputed that the plaintiffs and the Porros executed the settlement documents, and that the Porros were dismissed from the case with prejudice. Thus, on August 27, 2013, the Porros executed affidavits in which they confirmed that they had no knowledge or information regarding the alleged disclosure or use of confidential information from the Porro litigation by Attorney Angueira "or anyone else in the Lohr Litigation or otherwise." (PAF ¶¶ 6-7; DMF ¶ 10; Singer Aff. Ex. 1 at 8-13). In addition, Kimmel and the Porros executed reciprocal Releases. (Singer Aff., Ex. 1 at 4-7). The Release that was signed by the plaintiffs provided in relevant part as follows:

For good and valuable consideration, Kimmel & Silverman, P.C. and its past, present and future officers, directors, shareholders, partners, members, employees, attorneys, ... successors and assigns, including, but not necessarily limited to, Craig Kimmel and Robert Silverman (hereinafter collectively "Releasors"), hereby completely remise, *release and forever discharge Jacqueline Porro and Matthew Porro and their past ... attorneys*, insurers, reinsurers, and assigns (hereinafter collectively "Releasees") of and from all ... actions, causes of action, suits, controversies ... and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and equity (hereinafter collectively "Claims"), which the Releasors now have or may have from the beginning of the world to this date against the Releasees ....

(Id. at 4 (emphasis added)). The Porros executed a similar Release in favor "Kimmel & Silverman, P.C. and its past, present and future . . . attorneys . . . including, but not necessarily limited to, Craig Kimmel and Robert Silverman[.]" (Id. at 6). The Swartz defendants were not signatories to either of the Releases, and are not specifically named in the documents. (PAF ¶12; DRAF ¶ 12). Nevertheless, in sharp contrast to their prior recognition that the case against them would continue, they now contend that the language in the Release including the Porros' "past attorneys" results in the dismissal of the claims against them as well.

Although Attorney Hamilton, counsel to the Swartz defendants, had not been involved in the settlement negotiations, counsel for Kimmel asked him to execute a Stipulation of Dismissal dismissing the Porros from the litigation. (See PAF ¶ 15). After reviewing the settlement documents that had been executed by Kimmel and the Porros, Attorney Hamilton authorized Kimmel's counsel to include his electronic signature on the Stipulation. (See id.). Accordingly, on September 24, 2013, counsel for the plaintiffs

filed a Stipulation of Dismissal as to Jacqueline Porro, Esq. and Matthew Porro, which

was executed by all of the parties to the litigation, and provided as follows:

> All parties who have appeared in the above-captioned action, the
> Plaintiffs Kimmel & Silverman, P.C., and Craig Kimmel, Esq., and
> the Defendants Jacqueline Porro, Esq., Matthew Porro, David P.
> Angueira, Esq. and Swartz & Swartz, P.C., hereby stipulate pursuant
> to Fed. R. Civ. P. 41(a)(1)(A)(ii) that this action be dismissed with
> prejudice as to all claims and causes of action with respect to the
> Defendants Jacqueline Porro, Esq. and Matthew Porro (hereinafter
> the "Porro Defendants"), with the Plaintiffs and the Porro
> Defendants each bearing their own attorneys' fees and costs.

(Singer Aff., Ex. 1 at 1-2). No such stipulation has ever been executed or filed with

respect to the Swartz defendants.

Following the dismissal of the Porros, the plaintiffs and the Swartz defendants

continued to conduct discovery. (See PAF ¶ 16). For example, in late September 2013,

Attorney Hamilton forwarded a copy of the Swartz defendants' interrogatories in Word at

the request of Attorney Singer, and on September 30, 2013, Kimmel served its responses

to the defendants' interrogatories. (Id.). Accordingly, the Swartz defendants' actions

following the settlement with the Porros was inconsistent with their current claim that the

plaintiffs had released all of their claims against them.

Additional factual details relevant to this court's analysis are set forth below where

appropriate.

### III.  ANALYSIS – SWARTZ DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT

By their first motion for summary judgment, the Swartz defendants argue that under the terms of the Release that Kimmel executed in favor of the Porros, Kimmel expressly "released the Porros' 'past . . . attorneys . . . from all actions, causes of action, [and] suits . . . which [the plaintiffs] now have or may have had from the beginning of the world to this date.'" (Def. Mem. (Docket No. 127) at 3). Because the Swartz defendants served as counsel to the Porros during the Porro Lawsuit, they contend that they have been released from liability to the plaintiffs in this case, and are entitled to judgment as a matter of law on all Counts of the complaint. For the reasons that follows, this court finds that the defendants' motion should be denied because the record demonstrates that Kimmel and the Porros had no intention of releasing the Swartz defendants as part of their settlement, and that the inclusion of the term "past attorneys," without an exclusion for the Swartz defendants, constituted a mutual mistake that warrants reformation of the Release agreement.

A.   **Summary Judgment Standard of Review**

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). Accordingly, the burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine'

if it 'may reasonably be resolved in favor of either party.'" <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008) (quoting <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." <u>Id.</u> (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." <u>PC Interiors, Ltd.</u>, 794 F. Supp. 2d at 275. "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). "The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor." <u>PC Interiors, Ltd.</u>, 794 F. Supp. 2d at 275. "Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." <u>Id.</u>

**B.  The Scope of the Release**

As described above, the Swartz defendants contend that they are entitled to summary judgment because Kimmel "*expressly* released the Porros' past attorneys, i.e., Swartz & Swartz, from any and all claims, including, but not limited to claims relating to the instant matter, as well as the Porro lawsuit." (Def. Mem. at 5). The plaintiffs

strenuously dispute this position, and have raised a number of arguments in opposition to the motion. This court finds persuasive the plaintiffs' argument that the term "past attorneys," as used in the Release, does not reflect the intent of the parties to the settlement, and warrants reformation of the document.

## Principles of Contract Interpretation

"The interpretation of releases is governed by principles of contract law." In re Babcock Borsig AG, 583 F. Supp. 2d 233, 236 (D. Mass 2008). The parties to the instant case agree that the substantive law of Massachusetts governs the present dispute. (See Def. Mem. at 4-5; Pl. Opp. Mem. (Docket No. 131) at 7-9). Under Massachusetts law, "[a] court interpreting a contract must first assess whether the contract is ambiguous." Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 783 (1st Cir. 2011) (applying Massachusetts contract law). In doing so, "the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties." Id. (quoting Bank v. Thermo Elemental Inc., 451 Mass. 638, 888 N.E.2d 897, 907 (2008)). An "[a]mbiguity is not created merely because the litigants disagree about the meaning of a contract." Id. (quoting Nicolaci v. Anapol, 387 F.3d 21, 26 (1st Cir. 2004)). Instead, "[c]ontract language is ambiguous where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." President of Harvard Coll. v. PECO Energy Co., 57 Mass. App. Ct. 888, 896, 787 N.E.2d 595, 601 (2003) (quotations and citations omitted).

If the court determines that the language of the contract is unambiguous, it must "interpret [the document] according to its plain terms." Farmer's Ins. Exchange, 632 F.3d at 784 (quoting Den Norske Bank AS v. First Nat'l Bank of Boston, 75 F.3d 49, 52 (1st Cir. 1996)). In construing the contract, the court must be "guided by 'the meaning of the terms of the writing in light of the circumstances.'" A.J. Props., LLC v. Stanley Black & Decker, Inc., 972 F. Supp. 2d 68, 75 (D. Mass. 2013) (quoting Robert Indus., Inc. v. Spence, 362 Mass. 751, 755, 291 N.E.2d 407 (1973)). The court "must seek 'to give effect to the parties' intentions and construe the language to give it reasonable meaning wherever possible.'" Id. (quoting Shea v. Bay State Gas Co., 383 Mass. 218, 224-25, 418 N.E.2d 597 (1981)). "Summary judgment is appropriate when [the] plain terms unambiguously favor either side." Farmers Ins. Exchange, 632 F.3d at 784.

If the court determines that the contract at issue is ambiguous, it "is free to look to extrinsic evidence in order to give a reasonable construction in light of the intentions of the parties at the time of formation of the contract." President of Harvard Coll., 57 Mass. App. Ct. at 896, 787 N.E.2d at 601 (internal citation omitted). Under those circum-stances, "summary judgment [will be] appropriate only if the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." Farmers Ins. Exchange, 632 F.3d at 784. "In the absence of fraud or mistake, 'an agreement is presumed to express the intent of the parties.'" Id. (quoting Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992)).

**Interpretation of the Release**

This court finds that the Release, as written, is unambiguous and that when the term "past attorneys" is given its ordinary meaning, it encompasses the Swartz defendants. As detailed above, the document expressly provides for the release of

> Jacqueline Porro and Matthew Porro and their past... attorneys...
> of and from all... actions, causes of action, suits... and any and all
> claims, demands and liabilities whatsoever of every name and
> nature, both in law and equity... which [the plaintiffs] now have or
> may have from the beginning of the world to this date....

(Singer Aff., Ex. 1 at 4). Because there is no dispute that the Swartz defendants acted as counsel to the Porros in the Porro Lawsuit, this court finds that they are past attorneys who fall within the scope of the Release.

The plaintiffs argue that this interpretation reflects an unreasonably broad reading of "past attorneys," and that the term does not encompass the Swartz defendants because they "were not representing Porro at the time the Defendants' wrongful disclosures which are the subject matter of this litigation were made." (Pl. Opp. Mem. at 4-5). This argument is inconsistent with the unambiguous language of the Release, which places no such limitation on the term "past attorneys," and covers various classes of individuals who had no participation in the conduct giving rise to this case. For example, but without limitation, the Release encompasses the Porros' "past, present and future employees, agents, partners, associates, executors, administrators, personal representatives, legatees, estates, heirs, [and] attorneys[.]" (See Singer Aff., Ex. 1 at 4 (emphasis added)). The inclusion of individuals who may have a future relationship with the Porros, including the

-20-

Porros' "future . . . attorneys," demonstrates that the plaintiffs' proposed interpretation is not reasonable.

The plaintiffs also argue that the court must look to the intent of the parties in order to determine what is meant by the phrase "past attorneys," and that if the court finds the phrase ambiguous, its interpretation must be governed by the parties' intent. (Pl. Opp. at 7-9). As described above, however, the plaintiffs have not presented a plausible interpretation of "past attorneys" that would exclude the Swartz defendants and support a reasonable difference of opinion as to its meaning. Therefore, they have not shown that it would be appropriate for this court to consider extrinsic evidence of the parties' intent in order to interpret the scope of the Release.

## C.    Application of Equitable Principles

As an alternative to their arguments regarding the scope of the Release, the plaintiffs have requested that this court deny the Swartz defendants' motion for summary judgment on equitable grounds. As an initial matter, the plaintiffs urge this court to invoke the doctrine of equitable estoppel in order to avoid the injustice that would occur if the Swartz defendants were released from the litigation when all of the parties knew, and represented to this court, that the settlement was intended to apply only to the Porros. (Pl. Opp. Mem. at 10-12). This court finds that the elements necessary for the application of equitable estoppel are not present in this case.

Equitable estoppel is defined as "a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting

-21-

a claim or defense, regardless of its substantive validity." <u>Phelps v. Fed. Emergency</u>
<u>Mgmt. Agency</u>, 785 F.2d 13, 16 (1st Cir. 1986). The doctrine may be invoked "when
'one person makes a definite misrepresentation of fact to another person having reason to
believe that the other will rely upon it and the other in reasonable reliance upon it' acts to
his or her detriment." <u>Id.</u> (quoting Restatement (Second) of Torts § 894(1) (1977)).
Here, however, Kimmel does not contend that the Swartz defendants made a misrepre-
sentation that caused the plaintiffs to alter their conduct or act in a manner that was
detrimental to their interests. Rather, they claim that the defendants are attempting to
claim the benefit of a Release that was executed by the plaintiffs as part of their own
agreement with another party. There is no indication that the Swartz defendants had any
input with respect to the language used in the Release. Therefore, the record does not
support the application of equitable estoppel.

However, this court does find persuasive the plaintiffs' next argument, which is
that there was no "meeting of the minds" between the parties to the settlement with
respect to the effect of the phrase "past attorneys," and that equitable principles support
the revision of the Release to reflect the true intentions of those parties. (<u>See</u> Pl. Opp.
Mem. at 12-14). "Under Massachusetts law, a written contract may be reformed if its
language 'does not reflect the true intent of both parties'" due to a mutual mistake.
<u>OneBeacon Am. Ins. Co. v. Travelers Indem. Co. of Ill.</u>, 465 F.3d 38, 41 (1st Cir. 2006)
(quoting <u>Polaroid Corp. v. Travelers Indem. Co.</u>, 414 Mass. 747, 754, 610 N.E.2d 912,
917 (1993)). Thus,

-22-

> [w]here a writing that evidences or embodies an agreement in whole
> or in part fails to express the agreement because of a mistake of both
> parties as to the contents or effect of the writing, the court may at the
> request of a party reform the writing to express the agreement,
> except to the extent that rights of third parties ... will be unfairly
> affected.

Id. (quoting Restatement (Second) of Contracts § 155 (2006)). Where a party requests

reformation of a contract based on a mutual mistake, "the parol evidence rule does not bar

consideration of extrinsic evidence of the parties' actual intent." Berezin v. Regency Sav.

Bank, 234 F.3d 68, 72 (1st Cir. 2000). Accordingly, "it does not matter that a contract

unambiguously says one thing. A court still will accept extrinsic evidence in evaluating a

claim that both parties to the contract intended it to say something else." OneBeacon

Am. Ins. Co., 465 F.3d at 41.

"Although the classic case for reformation is when the mutual mistake can be

traced to a typo or transcription error, a scrivener's error is not a prerequisite for

reformation. Mutual mistakes justifying contract reformation may result simply from the

parties' inattention." Id. (internal quotations, citation and alteration omitted). On the

other hand, "Massachusetts courts have required a party to present clear and convincing

evidence before reforming a contract on the grounds of mutual mistake." Berezin, 234

F.3d at 72. This requirement "strikes an appropriate balance between the parol evidence

rule and the importance of ensuring that a written agreement reflects the true intent of the

parties." Id.

This court finds that there is clear and convincing evidence that the parties to the settlement had no intention of releasing the Swartz defendants from this litigation, and that all of the participants in this case, including this court and the Swartz defendants themselves, understood that the settlement would resolve only the plaintiffs' claims against the Porros. As described above, on July 19, 2013, the parties filed a Joint Status Conference Statement in which they specifically informed this court that the plaintiffs were finalizing a settlement with the Porros, which would release those defendants from the litigation, and apprised the court as to the status of ongoing discovery between the plaintiffs and the Swartz defendants. (Singer Aff., Ex. 2 at 1-3). Moreover, throughout the course of the status conference that was held before this court on July 24, 2013, the parties made representations to the effect that a settlement between the plaintiffs and the Porros was imminent, and that the plaintiffs were proceeding with their prosecution of the case against the Swartz defendants. (See Singer Aff., Ex. 3 at 2-14). The settlement documents do not name the Swartz defendants and these defendants did not sign a Release. (See Singer Aff. ¶ 8 & Ex. 1 at 4-7; PAF ¶ 12; DRAF ¶ 12). Ultimately, the plaintiffs filed a Stipulation of Dismissal, which was executed by all of the parties and dismissed only the plaintiffs' claims against the Porros with prejudice. (Singer Aff., Ex. 1 at 1-2). After the Stipulation was filed with the court, the Swartz defendants continued to engage in discovery. (PAF ¶ 16). Therefore, all of the objective evidence regarding the parties' course of conduct demonstrates that Kimmel and the Porros did not intend to release the Swartz defendants from the litigation, and that the inclusion of the Swartz

-24-

defendants within the scope of the Release that was executed by the plaintiffs amounted to a mutual mistake. (See also Singer Aff. ¶¶ 14-15 (counsel attests that he "never intended the Release given by Kimmel & Silverman to the Porros was also to run in favor of Swartz & Swartz[,]" and that the plaintiffs never received any separate consideration for the Release from the Swartz defendants)). Accordingly, the undisputed facts demonstrate, "to a high degree of certainty[,]" that the Release did not express the intent of the parties, and that the plaintiffs are entitled to have the document revised in order to exclude the Swartz defendants from its scope. See OneBeacon Am. Ins. Co., 465 F.3d at 42 (explaining that party claiming mutual mistake "must demonstrate – to a high degree of certainty . . . that the contract language did not express the agreement as originally intended").

The defendants' reliance on Eck v. Godbout, 444 Mass. 724, 831 N.E.2d 296 (2005) does not support a different outcome. In that case, the Supreme Judicial Court held that "[a] release may be rescinded or modified based on a mutual mistake of the parties, but not on one party's unilateral 'mistake' about how future contingencies might make the release inadvisable." Eck, 444 Mass. at 731, 831 N.E.2d at 303. It further emphasized that "the mere fact that a release as worded extends to matters that the parties did not specifically have in mind at the time of execution does not operate to exclude those matters from the scope of the release." Id. at 732, 831 N.E.2d at 303. Thus, the Eck court was drawing a distinction "between a contract that does not accurately reflect (hence misrepresents) the agreement of the parties and a contract that accurately reflects

the intent of the parties but is premised on some mistaken fact." OneBeacon Am. Ins. Co., 465 F.3d at 42. Under Massachusetts law, "[r]eformation is not available to correct mistaken factual assumptions about the parties' bargain, but may be used to correct misrepresentations of the parties' contractual intent." Id.

In the instant case, the record establishes that the Release at issue does not represent the intent of the parties to the settlement, and erroneously releases parties who were not intended to be included within the scope of the settlement documents. The circumstances are therefore distinguishable from those described in Eck, and support reformation of the Release based on a mutual mistake by Kimmel and the Porros.

## IV. ANALYSIS – PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

By their Further Motion for Summary Judgment, the Swartz defendants are seeking summary judgment on the merits of Kimmel's claims.[2] In doing so, they have presented the same arguments that were raised in connection with the parties' prior motions before the court, including but not limited to, their arguments that the conduct giving rise to Kimmel's claims is protected by the absolute litigation privilege, and that

---

[2] The Swartz defendants raised the same arguments in their reply memorandum in support of their first motion for summary judgment. However, "[b]lack-letter law holds that, in the absence of exceptional circumstances, arguments presented for the first time in [a] ... reply brief are deemed waived." Alamo-Hornedo v. Puig, 745 F.3d 578, 582 (1st Cir. 2014). See also Napert v. Gov't Emps. Ins. Co., Civil Action No. 13-10530-FDS, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013) (slip op.) ("Where, as here, a moving party raises an argument for the first time in a reply brief, that argument is waived"). Since there are no exceptional circumstances here, the defendants' arguments will only be addressed in the context of their further motion for summary judgment.

their actions in filing materials from the Porro Lawsuit in the Lohr Lawsuit constituted an appropriate "use" of that information under the Massachusetts Rules of Professional Conduct. The plaintiffs argue that such arguments are foreclosed because the court's prior rulings on those issues constitute the "law of the case." They also contend that the defendants have failed to show that they are entitled to judgment as a matter of law under any legal theory, and they have cross-moved for summary judgment with respect to their claim, asserted in Count I of their complaint, that the defendants' disclosure of confidential information in the Lohr Lawsuit constituted a breach of the Settlement Agreement in the Porro Lawsuit. For the reasons that follow, this court finds that the court's prior rulings do not constitute the law of the case, and that the defendants are entitled to have their arguments addressed on the merits. This court further finds that the absolute litigation privilege precludes liability against the Swartz defendants based on any statements they made or conduct they engaged in during the course of prior litigation, including their actions in filing alleged confidential materials from the Porro Lawsuit in the Lohr Lawsuit. Therefore, this court recommends that the Swartz defendants' further motion for summary judgment be allowed, and that the plaintiffs' cross-motion for summary judgment on their breach of contract claim be denied.

## A.    The "Law of the Case" Doctrine

The plaintiffs argue, as a threshold matter, that the rulings set forth in the District Judge's March 28, 2012 Opinion and Order, and in this court's June 3, 2013 R&R constitute the "law of the case." (Pl. 2d Opp. Mem. (Docket No. 147) at 5). As such,

they contend that the parties are bound by those rulings to the extent the same issues have been raised by the Swartz defendants at this stage of the litigation. (See id. at 5-6). This court finds that the "law of the case" doctrine does not apply under the present circumstances, and that the defendants are entitled to have all of their arguments addressed on the merits.

The law of the case doctrine "provides that 'unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.'" Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002) (quoting Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997)). "This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." Id. However, "[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994). Consequently, the plaintiffs have not shown that the doctrine is applicable here.

In addition, "the law of the case doctrine . . . 'is neither an absolute bar to reconsideration nor a limitation on a federal court's power.'" Id. (quoting United States v. Rivera-Martinez, 931 F.2d 148, 150-51 (1st Cir. 1991)). Thus, even if the doctrine were applicable, it would not bar this court from re-visiting issues that were addressed by the District Judge or this court in prior decisions. This court specifically authorized the Swartz defendants to "reargue their positions following the further development of the

-28-

factual record through discovery." (R&R at 1). For this reason as well, the defendants are entitled to have their present motion evaluated on the merits.

### B. The Absolute Litigation Privilege

Among the principal issues raised by the Swartz defendants in support of their further motion for summary judgment and in opposition to the plaintiffs' cross-motion is the issue whether the absolute litigation privilege shields them from liability in this case. The Swartz defendants argue that all of the challenged conduct giving rise to the plaintiffs' claims was absolutely privileged because it was carried out by attorneys in the course of litigation. (See Def. 2d Mem. (Docket No. 145) at 11-13; Def. Opp. Mem. (Docket No. 155) at 8-11). Therefore, they contend that none of the plaintiffs' claims against them are actionable. After surveying the relevant law in Massachusetts, as well as the case law from other jurisdictions, this court is constrained to agree.[3]

### The Scope of the Privilege

"Under Massachusetts law, an attorney's statements are absolutely privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communica-

---

[3] This court recognizes that applying, arguendo, its preliminary rulings that the Swartz defendants were parties to the Settlement Agreement in the Porro Lawsuit, and that the defendants were not compelled by the ethical rules to file the challenged documents, the instant ruling may result in counsel being allowed to breach a confidentiality agreement with impunity. Nevertheless, in light of the strong policy behind the litigation privilege, as discussed herein, this court concludes that it has no choice but to recommend the dismissal of the claims against the Swartz defendants.

-29-

tions preliminary to litigation.'" Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984)

(quoting Sriberg v. Raymond, 370 Mass. 105, 109, 345 N.E.2d 882, 884 (1976)). "The

privilege 'is based upon a public policy of securing to attorneys as officers of the court

the utmost freedom in their efforts to secure justice for their clients.'" Bartle v. Berry, 80

Mass. App. Ct. 372, 378, 953 N.E.2d 243, 249 (2011) (quoting Sullivan v. Birmingham,

11 Mass. App. Ct. 359, 361, 416 N.E.2d 528 (1981)) (additional citation omitted). Thus,

it "shields an attorney from civil liability for statements made in the course of litigation."

Id.

In the instant matter, the Swartz defendants claim that the absolute litigation

privilege protects them from liability based not only on any statements they made, but

also on their actions in filing deposition transcripts and an email chain during the course

of litigation in the Lohr Lawsuit. (See Def. 2d Mem. at 12). The plaintiffs do not dispute

that the privilege applies to an attorney's conduct in carrying out tasks associated with the

litigation process a well as to an attorney's communications. See Kurker v. Hill, 44

Mass. App. Ct. 184, 192, 689 N.E.2d 833, 838 (1998) (indicating that litigation privilege

shields attorneys from liability for conduct during litigation, but not for conduct in

counseling and assisting clients with respect to business matters generally). See also

Taylor v. McNichols, 149 Idaho 826, 839, 243 P.3d 642, 655 (2010) (finding that the

litigation privilege "protect[s] attorneys against civil actions which arise as a result of

their conduct or communications in the representation of a client, related to a judicial

proceeding"); Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai'i

251, 268-71, 151 P.3d 732, 752 (2007) (finding that absolute litigation privilege applied

to attorneys' conduct in managing inspection and review of books and records); Clark v.

Druckman, 218 W.Va. 427, 433, 624 S.E.2d 864, 870 (2005) (declining to "distinguish

between *communications* made during the litigation process and *conduct* occurring during

the litigation process" for purposes of the litigation privilege). This is consistent with the

policy of affording attorneys "the utmost freedom in their efforts to secure justice for

their clients." Bartle, 80 Mass. App. Ct. at 378, 953 N.E.2d at 249 (quoting Sullivan, 11

Mass. App. Ct. at 361, 416 N.E.2d 528).

## Application of the Privilege

In the instant case, it is undisputed that all of the plaintiffs' claims are based on the

Swartz defendants' conduct while they were representing their clients during the course

of litigation. Both of their contract claims, as well as their claim for tortious interference,

are based on the Swartz defendants' filing of deposition transcripts and an email chain

with the court in support of their client's opposition to a motion to dismiss in the Lohr

Lawsuit. (See Compl. at Counts I-III). The plaintiffs' fraud claim is based on statements

that the Swartz defendants' allegedly made in connection with settlement discussions

undertaken during the course of the Porro Lawsuit. (See Compl. at Count IV). Based on

the relevant authority, this court finds that the absolute litigation privilege protects the

Swartz defendants from liability in this case.

The plaintiffs argue that the defendants cannot be permitted to hide behind the

litigation privilege in light of their confidentiality obligations under the Settlement

Agreement in the Porro Lawsuit. Thus, they contend that "[w]hile the privilege serves a specific purpose – to secure freedom of expression for attorneys in pursuit of their clients' interests – that purpose is subsumed here by an underlying contractual obligation." (Pl. 2d Opp. Mem. at 10). However, Massachusetts courts have not recognized an exception to the litigation privilege for breach of contract claims against an attorney. Instead, those courts have applied the privilege "as a general bar to civil liability based on the attorney's statements." Blanchette, 734 F.2d at 877. See also Bartle, 80 Mass. App. Ct. at 378, 953 N.E.2d at 249 ("The privilege applies not only to defamation claims brought against the attorney, but to civil liability generally"). As the Massachusetts Appeals Court has explained: "the absolute privilege which attaches to those statements protects the maker from any civil liability based thereon . . . . To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory." Visnick v. Caulfield, 73 Mass. App. Ct. 809, 813, 901 N.E.2d 1261, 1264-65 (2009) (quoting Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140-41, 668 N.E.2d 1329 (1996)) (alteration omitted).

Courts that have addressed the question directly have ruled that the litigation privilege does not yield to a litigant's obligations under a pre-existing contract. See, e.g., Rain v. Rolls-Royce Corp., 626 F.3d 372, 377-78 (7th Cir. 2010) (describing cases in which courts in other jurisdictions have found that the absolute litigation privilege was applicable to claims for breach of contract, and predicting that Indiana Supreme Court would refuse to impose liability for violation of settlement agreement based on applica-

tion of the privilege); <u>Kelly v. Golden</u>, 352 F.3d 344, 350 (8th Cir. 2004) (finding that defendant was not entitled to summary judgment on counterclaim for breach of a confidentiality agreement where actions giving rise to counterclaim occurred in the context of litigation and were protected by the absolute litigation privilege). This is consistent with the policy underlying the privilege. As one Massachusetts court explained in connection with its discussion of that policy:

> The rule exists, not because the [unlawful] conduct of [the defendants] ought not to be actionable, but because, if their conduct were actionable, actions would be brought against them in cases in which they had not [acted improperly]; it is not a desire to prevent actions from being brought in cases where they ought to be maintained, but the fear that if the rule were otherwise, numerous actions would be brought against persons who were acting honestly in the discharge of a duty.

<u>Sullivan</u>, 11 Mass. App. Ct. at 367, 416 N.E.2d at 533 (quotations and citation omitted). Thus, the policy supporting the privilege "would be severely undercut if the absolute privilege were to be regarded as less than a bar to *all actions* arising out of the 'conduct of parties and/or witnesses in connection with a judicial proceeding.'" <u>Id.</u> at 368, 416 N.E.2d at 533 (quoting <u>Devlin v. Greiner</u>, 147 N.J. Super. 446, 455, 371 A.2d 380 (1977)) (emphasis added).

Kimmel suggests that the policy favoring the enforcement of settlement agreements precludes the application of the privilege in this instance. (Pl. Reply Mem. (Docket No. 159) at 7). This argument is insufficient to withstand summary judgment. As an initial matter, the plaintiffs have not cited any authority holding that the litigation

-33-

privilege is outweighed by the need to ensure that a party adheres to its contractual obligations. In addition, the enforceability of the Settlement Agreement "is not at issue. Rather, the question is whether to impose liability for a violation of that agreement." Rain, 626 F.3d at 378. As described above, both the applicable case law and the policy behind the absolute litigation privilege compel the conclusion that the Swartz defendants cannot be held liable for any such violation. Accordingly, this court recommends that the defendants' further motion for summary judgment be allowed, and that the plaintiffs' cross-motion for summary judgment on their breach of contract claim be denied.[4]

## V.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion for Summary Judgment" (Docket No. 126) be DENIED, and that the Release that was executed by Kimmel be reformed to exclude the Swartz defendants from its scope. This court also recommends, for the reasons described above, that the "Defendants' Further Motion for Summary Judgment" (Docket No. 144) be ALLOWED, and that the "Plaintiffs' Cross-Motion for Partial Summary Judgment as to Liability on Count I" (Docket No. 151) be DENIED.[5]

---

[4] In light of this court's conclusion that the absolute litigation privilege precludes liability against the Swartz defendants in this case, it is unnecessary to address the parties' remaining arguments in support of their motions for summary judgment.

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The

                     / s / Judith Gail Dein
                     Judith Gail Dein
                     U.S. Magistrate Judge

---

parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

-35-